Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,068-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                           Appellee

versus

LESTER DAVID CHEVEALLIER                     Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 242,626E

Honorable Alexandra Aiello Stahl, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Mary C. "Connie" Hanes

LESTER DAVID CHEVEALLIER                     Pro Se

JOHN SCHUYLER MARVIN                     Counsel for Appellee
District Attorney

RICHARD RUSSELL RAY
JESSICA GREEN DAVIS
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and MARCOTTE, JJ.

**MARCOTTE, J.**

This criminal appeal arises from the 26th Judicial District Court, Parish of Bossier, the Honorable Allie Aiello Stahl presiding. Defendant, Lester David Cheveallier, pled guilty to one count of distribution or possession with intent to distribute pornography involving juveniles and was sentenced to 12 years at hard labor without benefits. For the following reasons, we affirm defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On June 8, 2022, Cheveallier was charged by amended bill of information with 15 counts of distribution or possession with intent to distribute pornography involving juveniles, in violation of La. R.S. 14:81.1(A)(1). The offenses occurred on or about April 22, 2022. Defendant initially pled not guilty. He was also charged with multiple offenses in other cases. Cheveallier filed several pro se pretrial motions, including at least seven motions to suppress.

On December 11, 2023, Cheveallier pled guilty to one count of distribution or possession with intent to distribute pornography involving juveniles. The state said that it tendered an offer to defendant that if he pled guilty to one count of distribution or possession with intent to distribute pornography involving juveniles with a recommended 15-year cap on his sentence, then it would not prosecute his remaining charges, including those in several of his other cases.

Cheveallier affirmed that he had read, signed, and initialed each page of his sex offender registry notifications, and he said that he did not have any questions for his attorney about the documents and fully understood them. Those documents appear in the record.

Cheveallier affirmed that he understood: (1) the mandatory minimum and maximum penalties for his charge; (2) that he had the right to counsel at every stage of the proceedings, including trial; and (3) that by pleading guilty he was giving up his right to a trial, to confront and cross-examine witnesses, and to compel witnesses to testify. Cheveallier said that his plea was voluntary, and no one had forced, threatened, or promised him anything in exchange for pleading guilty.

The assistant district attorney stated that defendant unlawfully possessed with intent to distribute pornography involving juveniles. The discovery was made after an undercover operation revealed contact with defendant. A search warrant was issued, and defendant's computer was seized; over 300 images of child pornography were found on his computer. Defendant agreed that those facts were correct. The trial court ordered a presentence investigation report ("PSI") and noted that Cheveallier's sentence was not to exceed 15 years.

On February 5, 2024, defendant filed a pro se motion to withdraw his guilty plea. He stated in his motion that his counsel told him that in return for his guilty plea: (1) his sentence was to be capped at 15 years; (2) the charges against his son Michael were to be dropped and his case dismissed; and (3) the charges against his son Clayton would be dropped, except for one charge (yet to be determined), and that Clayton would receive only time served and possibly have to register as a sex offender. He stated that the assistant district attorney said that she would "aggressively prosecute" the case against him and would seek a minimum sentence of 40 years.

Cheveallier also said that he was told that the state would "aggressively prosecute" the cases against his sons and seek the maximum

2

possible sentences for both. He said that the plea was "coercive in nature and preys upon a father's love for his children." Defendant wrote that his plea deal was not put into writing, "unlike all other plea deals I['ve] seen." Cheveallier said he did not want to accept the plea deal and wished to maintain his not guilty plea.

On March 7, 2024, a hearing was held on defendant's motion to withdraw his guilty plea. Cheveallier's attorney, Larrion Hillman ("Atty. Hillman"), stated that he was not adopting defendant's motion but was there to advise him. The state argued that its plea negotiations with defendant were separate from the concurrent negotiations with his sons. The state said that it was not privy to what Atty. Hillman or defendant's sons' attorneys communicated to Cheveallier about the plea agreements. The state said that Clayton was allowed to plead guilty to sexual abuse of an animal and was given a five-year suspended sentence with three years of active probation; he was not required to register as a sex offender.

Attorney Kathryn Bloomfield ("Atty. Bloomfield"), who represented Clayton, stated that she was still in negotiations with the state about her client's plea when defendant pled guilty on December 11, 2023. She said that Clayton had not yet pled guilty at that time because they were waiting for defendant's case to be resolved. Atty. Bloomfield said she and her client were happy with the plea deal Clayton received.

Atty. Hillman stated that when defendant entered his guilty plea, the state was extending offers to his sons which would have allowed them to get out of jail. Atty. Hillman said that defendant's sons chose not to take those plea deals; their attorneys were able to secure for them better deals which eliminated the sex offender registration requirement. Defendant said that his

understanding of his plea deal was that if he pled guilty and withdrew his pending motions, the state would offer a deal to his sons that would allow them to go home the same day.

Cheveallier argued that he believed the state was "using my sons against me to get me to make a plea deal." He said he was given less than 24 hours to make the decision. He stated that he felt the situation placed him under duress because he had an instinct to protect his children. He then said, "I felt that it was just too coercive … and too abrupt for me to make any kind of rational decision at that time."

Defendant said that he was told that if he did not take the plea deal, his sons would be prosecuted "to the fullest extent." Cheveallier affirmed that when he was offered his plea deal, his sons had already been arrested and billed for their offenses. He said he was told that the state would offer his sons plea deals that would allow them immediate release and that the state intended to dismiss all charges against one of his sons. Cheveallier said that at the time of his guilty plea, he had not received the digital forensic report about his crime, so he did not have all the information about the state's case against him.

The court said that Cheveallier had "buyer's remorse" and that his sons had already been arrested and charged when defendant pled guilty, so there was nothing that was being held over his head to coerce him into pleading guilty. The trial court denied his motion, finding that there was no basis for allowing him to withdraw his plea, other than that defendant had changed his mind. Cheveallier objected to the ruling.

On the same date, the trial court sentenced defendant. The trial court, referencing defendant's PSI, said that Cheveallier had no criminal history.

4

Cheveallier informed the court that his cancer had returned. The court considered the factors found in La. C. Cr. P. art. 894.1. The trial court sentenced Cheveallier to 12 years at hard labor without benefits. The court informed defendant that he was required to register as a sex offender upon his release. The trial court informed defendant of his post-conviction relief time constraints.

Cheveallier filed a motion to reconsider sentence stating that his sentence was excessive and should be reduced. The motion was denied. Cheveallier now appeals.

## DISCUSSION

*Guilty Plea*

In his counseled assignment of error, defendant argues the trial court abused its discretion in denying his motion to withdraw his guilty plea. Appellant states that he felt under duress to accept the plea deal that was offered because he thought at least one of his sons was going to have his charges dismissed and would be going home the same day. He asserts that he believed his other son would get a plea deal for time served and be able to go home that same day as well. Appellant states that he felt under duress because he had less than 24 hours to accept the deal. Appellant argues that the trial court was incorrect in finding that his sons received the plea offers he expected them to receive.

He claims his plea was not voluntarily and intelligently made, and he asks this court to reverse the ruling of the trial court denying his motion to withdraw his guilty plea and vacate his conviction and sentence. In the alternative, appellant asks this court to remand his case for a new hearing on his motion to withdraw his guilty plea because Atty. Hillman did not explain

5

at the hearing what information he conveyed to Cheveallier about the plea offers made to his sons.

The state argues that Cheveallier was informed of and voluntarily waived his constitutional rights when he pled guilty. Appellee contends that the trial court properly *Boykinized*[1] defendant and he agreed to the factual basis provided for his plea. Appellee argues that the trial court complied with the requirements of La. C. Cr. P. art. 556.1 and that the court conducted a hearing on whether defendant's guilty plea was knowingly and voluntarily made. Appellee states that Cheveallier had a change of heart about his guilty plea, which is not a basis for allowing him to withdraw his plea. Appellee contends that it did not breach the plea agreement and asks that this court affirm defendant's conviction and sentence.

Upon motion of the defendant and after a contradictory hearing, which may be waived by the state in writing, the court may permit a plea of guilty to be withdrawn at any time before sentence. La. C. Cr. P. art. 559(A). The discretion to allow the withdrawal of a guilty plea under La. C. Cr. P. art. 559(A) lies with the trial court and such discretion cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. *State v. Branch*, 54,951 (La. App. 2 Cir. 4/5/23), 361 So. 3d 80; *State v. McGarr*, 52,641, 52,642 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1189. A defendant has no absolute right to withdraw a guilty plea. *Id.*

Under La. C. Cr. P. art. 556.1, a valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. La. C. Cr. P. art. 556.1 also provides that prior to accepting a guilty plea, the court must

---

[1] *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. When the record establishes that an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite the record, his guilty plea was involuntary. *State v. Branch*, *supra.* An express and knowing waiver of an accused's rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. *Boykin v. Alabama*, *supra*; *State v. Branch*, *supra*; *State v. McGarr*, *supra.*

When ruling on a motion to withdraw a guilty plea, the trial court should look beyond the *Boykinization* and consider all relevant factors. *State v. Branch*, *supra*; *State v. Griffin*, 535 So. 2d 1143 (La. App. 2 Cir. 1988). A court, when called upon to ascertain an accused's state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. *State v. Lewis*, 421 So. 2d 224 (La. 1982); *State v. Galliano,* 396 So. 2d 1288 (La. 1981); *State v. Branch*, *supra.*

To properly exercise its discretion and for the appellate court to review the exercise of that discretion, the trial court should conduct a hearing or inquiry on defendant's motion to withdraw a guilty plea. *Id*.; *State v. McGarr*, *supra.* Reasons supporting withdrawal of the plea would ordinarily include factors bearing on whether the guilty plea was voluntarily and intelligently made, such as breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like. *State v. Branch*, *supra.* A mere change of heart or mind by the

7

defendant as to whether he made a good bargain would not ordinarily support allowing the withdrawal of a bargained guilty plea. *Id.*

Whoever distributes or possesses with the intent to distribute pornography involving juveniles shall be fined not more than $50,000 and shall be imprisoned at hard labor for not less than 5 years or more than 20 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:81.1(E)(2)(a).

The record reflects that Cheveallier was properly informed of his rights at the time his guilty plea was accepted; he affirmed his intention to waive those rights. The assistant district attorney stated that the plea deal was as follows: if defendant pled guilty to one count of distribution or possession with intent to distribute pornography involving juveniles, the state would recommend a 15-year cap on his sentence and would not prosecute his remaining charges that appeared on the December 11, 2023, docket, which included 5 other cases.

Cheveallier was present in court at that time, heard the state's rendition of his plea agreement, and then proceeded to plead guilty. No mention was made about defendant's sons during his plea colloquy, and Cheveallier agreed to the state's factual basis. Defendant affirmed that his plea was voluntary and no one forced, threatened, or promised him anything to secure his guilty plea. Atty. Hillman was present to advise Cheveallier, though he did not join defendant in his motion to withdraw his guilty plea. The trial court also stated that his sentence would be capped at 15 years.

As a basis for withdrawing his guilty plea, defendant claimed he was told his sons would receive benefits from him pleading guilty and that the state would "aggressively" prosecute them and seek the maximum sentence

8

for both if he did not plead guilty. Defendant claimed that the thought of his sons being prosecuted in such a manner made him feel that he was under duress. However, as the trial court pointed out at the hearing on withdrawing his guilty plea, defendant's sons had already been arrested, charged, and were facing prosecution when he pled guilty. The trial court stated that Cheveallier had "buyer's remorse" about the deal he received. We agree.

Defendant's change of heart is not a basis for withdrawing a guilty plea. In fact, it appears that his sons received better plea deals than those initially offered. He cannot withdraw his guilty plea because he saw that his sons received better plea agreements than he did. He received enormous benefit from being allowed to plead to a single count of distribution or possession with intent to distribute pornography involving juveniles. His sentence was capped at 15 years, and the state agreed to dismiss more than two dozen other charges against him. He faced up to 20 years in prison for a single count under La. R.S. 14:81.1 but instead received a 12-year sentence. We emphasize that defendant's computer contained more than 300 images of pornography involving juveniles.

We find that Cheveallier's guilty plea was constitutionally sound, and the trial court did not abuse its discretion in denying his motion to withdraw his guilty plea. This assignment of error has no merit and defendant's conviction and sentence are affirmed.

*Pro Se Assignments of Error*

Defendant's pro se assignments of error are as follows:

1) The investigating police officers committed a crime by impersonating a fictitious anime character when entering an online private chat room for adults and informing the

9

group that the account belonged to a 15-year-old. A fictitious anime character is not a person and cannot accrue any rights under the law. Cheveallier also claims that the officers committed perjury in their search warrant because the chat room they entered required age verification before entering.

2) The investigating police officers committed the crime of endeavoring to intercept private communications by impersonating a male anime cartoon and capturing communications sent as part of a sting operation.

3) The investigating police officers obtained the contents of private communications without a warrant.

4) The police illegally intercepted his private communications because the investigating officer in question was not a party to the communications.

5) The investigating police officers committed identity theft because their physical attributes did not match those of the male anime character depicted in association with the online account with which defendant communicated.

6) The investigating officers used the online platform by which they communicated with defendant illegally because the officers impersonated a minor, male anime character, and the platform did not allow minors to use the platform without parental supervision.

7) One of the investigating officers conducted his own administrative review of his agency's policy regarding computer forensics and, therefore, had no oversight as to his use of electronic surveillance.

8) He alleges that: (a) his defense counsel told the district attorney that he had no reason to plead guilty unless his sons were released from custody, which was a statement his counsel made without his permission; (b) his plea was not voluntary because he said at his plea colloquy that he had been threatened due to fearing the consequences and "a parent's natural instinct to protect his family"; and (c) the district attorney did not disclose *Brady* evidence.

Generally, a valid, unqualified plea of guilty waives a defendant's right to appeal all non-jurisdictional defects in the proceedings prior to the

plea. *State v. Crosby*, 338 So. 2d 584 (La. 1976); *State v. Bradham,* 51,889 (La. App. 2 Cir. 4/11/18), 246 So. 3d 775. A defendant's guilty plea also waives any right to question the merits of the state's case and factual basis for the plea. *State v. Branch*, *supra*.

Because we are upholding defendant's guilty plea and affirming his conviction and sentence, any non-jurisdictional defects of which he now complains are waived. Furthermore, we note that Cheveallier stated at the hearing on his motion to withdraw his guilty plea that Atty. Hillman communicated to him that his plea agreement was contingent upon him withdrawing all the motions he filed, which included his many motions to suppress. The claims made in defendant's motions to suppress are also found in his assignments of error.

To the extent that defendant is asserting that his defense counsel was ineffective, we note that such a claim is generally more properly raised in an application for post-conviction relief in the trial court, where there is an opportunity for an evidentiary hearing. *State v. Burch*, 52,247 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1190. Thus, we decline to address the issue in this appeal.

*Errors Patent*

In reviewing the record for errors patent, we find defendant's sentence to be illegally lenient. For Cheveallier's conviction for distribution or possession with intent to distribute pornography involving juveniles, the trial court failed to impose the mandatory fine of not more than $50,000 pursuant to La. R.S. 14:81.1(E)(2)(a). Defendant is not prejudiced in any way by the trial court's failure to impose the mandatory fine. An illegally lenient sentence may be corrected at any time by the court that imposed the sentence

11

or by an appellate court on review. La. C. Cr. P. art. 882(A). This court, however, is not required to take such action. *See State v. Green*, 54,267 (La. App. 2 Cir. 3/9/22), 334 So. 3d 1107. Since this court is not required to act, the state has not objected to the error, and defendant is not prejudiced in any way by the failure to impose the mandatory fine, we decline to impose the fine.

## CONCLUSION

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**